NOT DESIGNATED FOR PUBLICATION

No. 124,086

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WADE A. DUNN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed July 1, 2022. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., COBLE, J., and PATRICK D. MCANANY, S.J.

PER CURIAM: In this appeal Wade A. Dunn seeks a reversal of his conviction for attempted second-degree murder because the trial judge failed to instruct the jury on the lesser included crime of attempted voluntary manslaughter. In our review we conclude that instructing the jury on this lesser included crime would not have been appropriate and, therefore, we affirm Dunn's conviction.

1

The events leading to Dunn's conviction occurred when the victim, Sarah Chadwick, had put a laundry basket in her car. As she turned around to return to her house, she heard someone approach her from behind. She turned around and was confronted by a man—later identified as Dunn—standing there holding a knife. The man repeatedly stabbed Chadwick while she pleaded with him to stop and attempted to defend herself. Dunn said nothing, but he eventually stopped and ran away. Chadwick was transported to the hospital in critical condition but survived the attack after several surgeries.

Through the use of various surveillance videos and the recovery of items of physical evidence, the police were able to identify Dunn as Chadwick's assailant. One of the surveillance videos from a neighbor across the street showed Dunn walking down the street and looking around before crouching behind Chadwick's car and then running towards Chadwick. Dunn was arrested and charged with attempted first-degree murder and aggravated battery.

At trial Dunn's defense centered on his claims of voluntary intoxication and the lack of premeditation. To that end, he called Jason Waters to testify. Waters worked for the city supervising a street cleaning team. He testified that he saw Dunn walking in the street on the morning of the attack and Dunn seemed nervous or "on something [like] drugs."

Dunn testified in his own defense. He said he had been using methamphetamine the night before the attack and felt like he was still under the influence the following morning. He also had smoked two joints of K2, a synthetic marijuana product, that morning. He had a knife with him because he is "a natural paranoid" and "wanted some

self-defense." He said he bought the knife at Wal-Mart the week before specifically for defensive purposes.

Dunn said that on the morning of the attack he was walking around in an old neighborhood where an ex-girlfriend lived and that he smoked another K2 joint as he walked along. He recalled feeling "cool" and then suddenly his "body got real heavy, like it felt like a weight on top of me." According to Dunn he could not remember seeing Chadwick or any of the attack, just that he suddenly found himself running away with a knife in his hand and covered in blood. Dunn said he never met Chadwick and had no plan to attack her.

The neighbor's surveillance video showing Dunn crouching behind Chadwick's car and turning and running towards Chadwick was introduced into evidence, filling in for the jury events that occurred immediately before the attack.

After Dunn was arrested, he was interviewed by a local television news reporter. He admitted at trial that he told the reporter that Chadwick "looked up and backed away" before the attack, that he felt threatened by something Chadwick did that "set [him] off," and that he must have attacked her because of a perceived threat. But he testified that he did not remember whether that was an actual recollection of the events or the product of videos, incident reports, and news articles he had seen.

Without objection, the jury instructions included the following:

Instruction No. 4:

"The defendant is charged in Count 1 with an attempt to commit Murder in the First Degree. The defendant pleads not guilty.
"To establish this charge, each of the following claims must be proved:

3

"1.     That defendant performed an overt act toward the commission of Murder in the First Degree;

"2.     That defendant did so with the intent to commit Murder in the First Degree;

"3.     The Defendant failed to complete commission of Murder in the First Degree;

"4.     That this act occurred on or about the 23rd day of September 2019, in Sedgwick County, Kansas.

"An overt act necessarily must extend beyond mere preparations made by the accused and must sufficiently approach consummation of the offense to stand either as the first or subsequent step in a direct movement toward the completed offense. Mere preparation is insufficient to constitute an overt act.

"The elements of the completed crime of Murder in the First Degree are as follows:

"1.     The defendant intentionally killed Sarah Chadwick.

"2.     The killing was done with premeditation.

"3.     This act occurred on or about the 23rd day of September 2019, in Sedgwick County, Kansas."

Instruction No. 5:

"The offense of Attempted First Degree Murder with which defendant is charged includes the lesser offense of Attempted Second Degree Murder. You may find the defendant guilty of Attempted First Degree Murder, Attempted Second Degree Murder, or not guilty. When there is a reasonable doubt as to which of two or more offenses defendant is guilty, he may be convicted of the lesser offense only, provided the lesser offense has been proven beyond a reasonable doubt. Your Presiding Juror should mark the appropriate verdict."

4

Instruction No. 6:

"If you do not agree that the defendant is guilty of Attempted Murder in the First Degree, you should then consider the lesser included offense of Attempted Murder in the Second Degree.

"To establish this charge, each of the following claims must be proved:

"1.     That the defendant performed an overt act toward the commission of the crime of murder in the second degree.

"2.     That the defendant did so with the intent to commit the crime of murder in the second degree.

"3.     That the defendant failed to complete commission of the crime of murder in the second degree;  and

"4.     That this act occurred on or about the 23rd day of September 2019, in Sedgwick County, Kansas.

"The elements of the completed crime of Murder in the Second Degree are as follows:

"1.     The defendant intentionally killed a human being.

"2.     This act occurred on or about the 23rd day of September 2019, in Sedgwick County, Kansas."

Instruction No. 10:

"Evidence of voluntary intoxication may be considered in determining whether such intoxication impaired the defendant's mental faculties to the extent that he was incapable of forming the necessary intent to form premeditation as set forth in instruction number 4 with regard to attempted first degree murder; or the necessary intent to kill as set forth in instruction 4 and 6 with regard to attempted first-degree murder and/or attempted second degree murder."

The jury ultimately found Dunn guilty of the lesser included offense of attempted second-degree intentional murder and guilty of aggravated battery. The court imposed

5

prison sentences of 247 months for attempted second-degree murder and a consecutive 43 months for aggravated battery.

ANALYSIS

Dunn appeals, contending that the trial court erred in not instructing the jury on the lesser included crime of attempted voluntary manslaughter as defined by K.S.A. 2019 Supp. 21-5404(a)(2), otherwise known as imperfect self-defense voluntary manslaughter.

Because Dunn did not request this instruction at trial, we apply the clear error standard. Under this standard Dunn must first show that failing to give this lesser included instruction was erroneous. Then, to show prejudicial error, Dunn must firmly convince us that the jury would have reached a different verdict if an instruction on the lesser included crime of attempted voluntary manslaughter had been given. See *State v. Williams*, 295 Kan. 506, 523-24, 286 P.3d 195 (2012). We only reach the prejudice element if the trial court erred in failing to give an instruction on attempted voluntary manslaughter.

When considering whether the trial court erred in failing to give an instruction on a lesser included crime, we consider whether the instruction was both factually and legally appropriate. In doing so we have unlimited review over the entire record. *State v. Holley*, 313 Kan. 249, 254, 485 P.3d 614 (2021).

*An Instruction on Attempted Voluntary Manslaughter was Legally Appropriate*

Voluntary manslaughter is a lesser degree of first-degree murder and therefore constitutes a lesser included offense. *State v. Pulliam*, 308 Kan. 1354, 1362, 430 P.3d 39 (2018) (noting the "five degrees of homicide" include "[i]n descending magnitude, . . . capital murder, first-degree murder, second-degree murder, voluntary manslaughter, and

6

involuntary manslaughter"). Under K.S.A. 2021 Supp. 21-5301(a), an attempt is "any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." Having instructed the jury on the charged crime of attempted first-degree murder, an instruction on the lesser included crime of attempted voluntary manslaughter would have been legally appropriate. See *State v. Gentry*, 310 Kan. 715, 733, 449 P.3d 429 (2019).

*An Instruction on Attempted Voluntary Manslaughter was not Factually Appropriate*

The next step in the analysis is to determine whether an attempted voluntary manslaughter instruction would have been factually appropriate. Here, a jury instruction on the lesser included crime of attempted voluntary manslaughter would have been factually appropriate if, viewing the evidence in the light favoring Dunn, there was sufficient evidence for a rational fact-finder to find that Dunn was guilty of this lesser included charge rather than attempted first-degree murder or attempted second-degree intentional murder. See *Holley*, 313 Kan. at 255; K.S.A. 2021 Supp. 22-3414(3).

As noted earlier, voluntary manslaughter as defined by K.S.A. 2021 Supp. 21-5404(a)(2) is known as imperfect self-defense voluntary manslaughter. Kansas law defines imperfect self-defense voluntary manslaughter as "knowingly killing a human being . . . upon *an unreasonable but honest belief that circumstances existed that justified use of deadly force* under K.S.A. 2021 Supp. 21-5222 . . . ." (Emphasis added.) K.S.A. 2021 Supp. 21-5404(a)(2).

There was no evidence that Dunn had an honest belief that Chadwick's conduct justified his attack on her as an act of self-defense. According to Dunn, he experienced a "blackout" and could not remember the moments just before or during the attack. He only

7

recalled walking in the neighborhood and using drugs before the attack and then suddenly realized he was running, holding a knife, and his shirt was covered in blood.

Dunn recalled being interviewed by a news reporter after his arrest. He did not remember telling the reporter that he believed Chadwick was a threat to him and that her actions set him off and he had to attack her. According to Dunn, he "must have seen [Chadwick] as a threat, . . . but I don't remember thinking that." The only actions attributed to Chadwick in the interview apparently involved her looking up and backing away. He did not deny making this statement in the news interview, but he did not remember doing so. His only explanation was that his statements to the reporter were probably the product of his review of police reports and a video. Dunn having essentially undermined the statements in the reporter's interview, the record is devoid of any evidence which, viewed in the light favoring Dunn, supports the notion that at the time of the attack Dunn had an honest belief that circumstances existed that justified use of deadly force against Chadwick.

In *State v. Roeder*, 300 Kan. 901, Syl. ¶ 5, 336 P.3d 831 (2014), our Supreme Court stated that "[a]n unreasonable but honest belief that circumstances existed that justified deadly force will not support a claim of imperfect [self-defense] unless the circumstances, if reasonably believed, would have supported a claim of perfect defense-of-others under [the prior version of K.S.A. 2021 Supp. 21-5222]." See also *State v. Seba*, 305 Kan. 185, 208-09, 380 P.3d 209 (2016) (citing *Roeder* and observing that "subjectively feeling fear is not sufficient to justify self-defense").

By his own admission, Dunn could only speculate about his thoughts before and during the attack. The only evidence about what occurred leading up to and during the attack came from the neighbor's video showing Dunn crouching behind Chadwick's car and then running towards Chadwick and Chadwick's testimony that Dunn ran up behind her and began stabbing her after she placed the laundry basket in the car. The record is

8

devoid of evidence, even when viewed in the light favoring Dunn, that Chadwick's actions caused him to believe that he needed to exercise deadly force to defend himself. There was no evidence that—in the words of the statute—Dunn had an *honest belief that circumstances existed that justified use of deadly force*. Therefore, giving a jury instruction on attempted voluntary manslaughter was not factually appropriate, and the district court did not err in failing to give it.

Because we conclude that the trial court did not err in failing to give an instruction on attempted voluntary manslaughter, we need not reach the element of prejudice under the clear error standard.

Affirmed.